## Case No. 15,282.

### UNITED STATES v. HALL et al.

[3 Chi. Leg. News, 260; 13 Int. Rev. Rec. 181.]

Circuit Court, S. D. Alabama. May, 1871.

CONSTITUTIONAL LAW—CITIZENSHIP—FOURTEENTH AMENDMENT—ENFORCEMENT ACT.

1. Under the original constitution and the first eight articles of amendment, congress had not the power to protect by law the people of a state in the freedom of speech and of the press, in the free exercise of religion or in the right peaceably to assemble.

2. It was the purpose of the people, by the first ten amendments, to reserve to themselves and the states the power to secure the rights enumerated therein against the action of congress and not give congress power to enforce them as against the states.

3. By the original constitution, citizenship in the United States was a consequence of citizenship in a state, but by the fourteenth amendment this order of things is reversed, and citizenship in the United States is defined and is made independent of citizenship in a state, and citizenship in the state is a result of citizenship in the United States, so that a person born or naturalized in the United States, and subject to its jurisdiction, is, without reference to state constitutions or laws, entitled to all the privileges and immunities secured by the constitution of the United States to citizens thereof.

4. The privileges and immunities here referred to may be denominated fundamental, which belong of right to the citizens of all free states, and which have been enjoyed by the citizens of the several states which compose the Union from the time of their becoming free; that among these are those which in the constitution are expressly secured to the people either as against the action of the federal or state governments. Included in these are the rights of freedom of speech, and the right peaceably to assemble.

5. The right of freedom of speech, and the other rights enumerated in the first eight articles of the amendment to the constitution of the United States, are the privileges and immunities of citizens of the United States, that they are secured by the constitution, and that congress has the power to protect them by appropriate legislation.

6. The "Enforcement Act," under which this indictment is founded, applies to cases of this kind, and that it is legislation appropriate to the end in view—the protection of the fundamental rights of citizens of the United States.

[This was an indictment against John Hall, Jr., and William Pettigrew.]

John P. Southworth, Dist. Atty., and Alex. McKinstry, for the United States.

Robert H. Smith, Turner Reavis, and Thos. H. Herndon, for defendants.

Before WOODS, Circuit Judge, and BUSTEED, District Judge.

WOODS, Circuit Judge. This is an indictment for a violation of the 6th section of the act of congress, approved May 31, 1870 [16 Stat. 140], entitled "An act to enforce the rights of citizens of the United States to vote in the several states of this Union, and for other purposes." It contains two counts. The first count in substance charges that the defendants did unlawfully and feloniously band and conspire together, with intent to injure, oppress, threaten and intimidate Charles Hays and others, naming them, citizens of the United States of America, with intent to prevent and hinder their free exercise and enjoyment of the right of freedom of speech, the same being a right and privilege granted and secured to them by the constitution of the United States. The second count charges in substance that the defendants did unlawfully and feloniously band and conspire together, with intent to injure, oppress, threaten and intimidate William Miller and others,

naming them, good and lawful citizens of the United States, with intent to prevent and hinder their free exercise and enjoyment of the right and privilege to peaceably assemble, the same being a right and privilege granted and secured to them by the constitution of the United States. A demurrer is filed to this indictment based on the following grounds: (1) That the matters charged in said counts are not in violation of any right or privilege granted or secured by the constitution of the United States. (2) That they are not in violation of any provision of the act of congress, on which the indictment is based, or of any statute of the United States. (3) That each of said counts charges the commission of several and distinct offenses.

Article 1 of amendments to the constitution provides that congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, or the right of the people "peaceably to assemble and petition the government for a redress of grievances." It is not claimed by counsel for the United States that freedom of speech and the right peaceably to assemble are rights granted by the constitution, but it is asserted that they are rights recognized and secured. On the other hand, counsel for defendants assert that while the constitution recognizes the existence of these rights it does not secure them. That the constitution only inhibits congress from impairing them, but that no such restriction applies to the states. In the case of Permoli v. First Municipality, 3 How. [44 U. S.] 600, it was held by the supreme court that "the constitution makes no provision for protecting the citizens of the respective states in their religious liberties. That is left to the state constitutions and laws. Nor is there any inhibition imposed by the constitution of the United States in this respect upon the states." This language may well be applied also to the rights of freedom of speech, and the right peaceably to assemble, which are referred to in the same article of amendment as the right of religious liberty. So in Barron v. Baltimore, 7 Pet. [32 U. S.] 243, the same court held that "the provision in the fifth amendment declaring that private property shall not be taken for public use without due compensation is intended solely as a limitation upon the exercise of power by congress, and is not applicable to the legislation of the states." In Pervear v. Commonwealth, 5 Wall. [72 U. S.] 476, the supreme court held that the provision in the 8th article of amendment that "excessive fines" shall not be "imposed, nor cruel and unusual punishments inflicted," applies to national, not to state, legislation.

The result of these and other authorities to the same effect, is that the right of freedom of speech and the right peaceably to assemble, and other rights enumerated in the first eight articles of amendment are protected by the constitution only against the legislation of congress, and not against the legislation of the states. Nevertheless, it is true that these rights are not secured to the people of the United States. The security may not be perfect and complete. These rights may be impaired by state legislation, yet they are secured against the action of congress. Can it be said, with truth, that the right of trial by jury, the right of the accused to be confronted with the witnesses against him, the right not to be deprived of life, liberty or property without due process of law, are not secured by the constitution of the United States? We think that all rights which are protected against either national or state legislation may fairly be said to be secured rights. If we assume, then, that the right of freedom of speech and the right peaceably to assemble are rights secured by the constitution of the United States, then the first two grounds of demurrer must be overruled, for the indictment alleges that the defendants did conspire together to injure and oppress the parties named with intent to prevent and hinder their free exercise and enjoyment of rights secured by the constitution, to wit: the right of freedom of speech and the right peaceably to assemble, and this the statute declares to be an offense.

The argument of this demurrer has taken a wide range, and questions not distinctly presented by it have been submitted to our consideration. As this discussion has called in question the power of congress to pass the act in which the indictment is founded, we will proceed to consider this objection to the indictment. It is claimed that when congress is prohibited from interfering with a right by legislation, that does not authorize congress to protect that right by legislation; that as the states are not prohibited by the constitution from interference with the rights under consideration, congress, although prohibited itself from impairing these rights, has no grant of power to interfere for their protection as against the states. That the first eight articles of amendment were passed as limitations upon the power of congress, and that the history of the constitution shows that in the adoption of these articles, it was not the purpose of the people to enlarge, but to restrain the power of congress. In the Federalist (article 84), Mr. Hamilton, in replying to the objection that the proposed constitution of the United States contained no bill of rights, says: "I affirm that bills of rights in the sense and to the extent they are contended for are not only unnecessary in the proposed constitution, but would be even dangerous. They would contain various exceptions to powers not granted, and on this very account would afford a colorable pretext to claim more than were granted. For why declare that things shall not be done which there is no power to do? Why, for instance, should it be said that the liberty of the press shall not be restrained when no power is given by which restrictions may be imposed.

I will not contend that such a provision will confer a regulating power, but it is evident it would afford to men disposed to usurp, a plausible pretense for claiming that power." The debates in the communities of the several states upon the adoption of the constitution and bill of rights proposed, especially in Massachusetts, New Hampshire and New York, show that the purpose of the people in the adoption of the first eight amendments was to limit, and not enlarge the powers of congress. See 1 Elliott's Debates, pp. 322, 326, 328. We are of opinion, therefore, that under the original constitution and the first eight articles of amendment, congress had not the power to protect by law the people of a state in the freedom of speech and of the press, in the free exercise of religion, or in the right peaceably to assemble. Jealousy of the power conferred on the congress by the original constitution suggested and accomplished the adoption of the first ten amendments to the constitution, and we entirely agree with counsel for defendants that it was the purpose of the people by these amendments to reserve to themselves and the states the power to secure the rights enumerated therein against the action of congress, and not give congress power to enforce them as against the states.

We have thus far considered this demurrer, and it seems to have been argued for the defense, without reference to the recent amendments to the constitution. As we are of opinion that the fourteenth amendment has a vital bearing upon the question raised, it is well that we should look to its provisions. It declares that "all persons, born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the state wherein they reside." By the original constitution citizenship in the United States was a consequence of citizenship in a state. By this clause this order of things is reversed. Citizenship in the United States is defined; it is made independent of citizenship in a state, and citizenship in a state is a result of citizenship in the United States. So that a person born or naturalized in the United States, and subject to its jurisdiction, is, without reference to state constitutions or laws, entitled to all the privileges and immunities secured by the constitution of the United States to citizens thereof. The amendment proceeds: "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States." What are the privileges and immunities of citizens of the United States here referred to? They are undoubtedly those which may be denominated fundamental: which belong of right to the citizens of all free states, and which have at all times been enjoyed by the citizens of the several states which compose this Union from the time of their becoming free, independent and sovereign. Corfield v. Coryell [Case No. 3,230]. Among these we are

safe in including those which in the constitution are expressly secured to the people, either as against the action of the federal or state governments. Included in these are the right of freedom of speech, and the right peaceably to assemble.

To recur now to the first ground of demurrer: are these rights secured to the people by the constitution of the United States? We find that congress is forbidden to impair them by the first amendment, and the states are forbidden to impair them by the fourteenth amendment. Can they not, then, be said to be completely secured? They are expressly recognized, and both congress and the states are forbidden to abridge them. Before the fourteenth amendment, congress could not impair them, but the states might. Since the fourteenth amendment, the bulwarks about these rights have been strengthened, and now the states are positively inhibited from impairing or abridging them, and so far as the provisions of the organic law can secure them they are completely and absolutely secured. The next clause of the fourteenth amendment reads: "Nor shall any state deny to any person within its jurisdiction the equal protection of the laws." Then follows an express grant of power to the federal government: "Congress may enforce this provision by appropriate legislation." From these provisions it follows clearly, as it seems to us, that congress has the power, by appropriate legislation, to protect the fundamental rights of citizens of the United States against unfriendly or insufficient state legislation, for the fourteenth amendment not only prohibits the making or enforcing of laws which shall abridge the privileges of the citizen, but prohibits the states from denying to all persons within its jurisdiction the equal protection of the laws. Denying includes inaction as well as action, and denying the equal protection of the laws includes the omission to protect, as well as the omission to pass laws for protection. The citizen of the United States is entitled to the enforcement of the laws for the protection of his fundamental rights, as well as the enactment of such laws. Therefore, to guard against the invasion of the citizen's fundamental rights, and to insure their adequate protection, as well against state legislation as state inaction, or incompetency, the amendment gives congress the power to enforce its provisions by appropriate legislation. And as it would be unseemly for congress to interfere directly with state enactments, and as it cannot compel the activity of state officials, the only appropriate legislation it can make is that which will operate directly on offenders and offenses, and protect the rights which the amendment secures. The extent to which congress shall exercise this power must depend on its discretion in view of the circumstances of each case. If the exercise of it in any case should seem to interfere with the domestic affairs of a state, it must

be remembered that it is for the purpose of protecting federal rights, and these must be protected even though it interfere with state laws or the administration of state laws. We think, therefore, that the right of freedom of speech, and the other rights enumerated in the first eight articles of amendment to the constitution of the United States, are the privileges and immunities of citizens of the United States, that they are secured by the constitution, that congress has the power to protect them by appropriate legislation. We are further of opinion that the act on which this indictment is founded applies to cases of this kind, and that it is legislation appropriate to the end in view, namely, the protection of the fundamental rights of citizens of the United States. But it is alleged for further ground of demurrer that this indictment charges the commission of several and distinct offenses. It charges that the defendants did band and conspire together, with intent to injure, oppress, threaten and intimidate, etc. The well-settled rule of criminal pleading is, that the operative words of a criminal statute may all be inserted in the indictment, connected by the conjunctive "and," and that proof of any one of the acts charged will sustain the indictment. This indictment is framed under this rule, and we think this objection to it not well taken.

We are of opinion, also, that this indictment is sufficiently definite and certain. The law describes particularly the offense created by it, and the indictment follows the language of the law. Our conclusion is, therefore, that the demurrer to this indictment must be overruled.